**FILED**

SEP 23 2011

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**NOT FOR CITATION**

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| STEVEN DORELL WILSON, | No. C 07-6095 JF (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| ROBERT A. HOREL, | |
| Respondent. | |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition will be DENIED.

## BACKGROUND

In 2005, a Santa Clara Superior Court jury convicted Petitioner of assault with a deadly weapon and first degree robbery. The trial court sentenced Petitioner to 56 years in state prison.

Evidence presented at trial demonstrated that Petitioner, who was armed with a gun and accompanied by three armed companions, entered the Lang family residence where one of the Langs' sons, David, was having a party. The four gunmen held the young adults

Order Denying Petition
P:\PRO-SE\SJ.JF\HC.07\Wilson095.hc.md.wpd

hostage while they took valuables from the victims. Petitioner struck David with a gun and ordered him at gunpoint to open the family's safe. David struggled with Petitioner, who fled. David had spoken with Petitioner, whom he did not know, in front of the house prior to the robbery. (Ans., Ex. G at 2–5.)

After the robbery, David's mother "found a court document [at the Lang residence] with [Petitioner's] name on it near David's motorcycle. The document was a minute order from a court appearance [Petitioner] had made in criminal court a few days before the robbery. Attached to the minute order was a referral to the public defender's office. No one in the household recognized [Petitioner's] name. Mrs. Lang gave the paperwork to the police immediately." (*Id.* at 5–6.)

A few days after the robbery,

> [a]n unknown gunman shot at the portion of the [Lang] residence where David's room was located at approximately 2:00 a.m. Several bullets penetrated the exterior wall and entered David's room and Dan [Lang]'s room, which was located behind David's room. At trial, the parties stipulated that [Petitioner] was in custody when the shooting occurred. Several witnesses testified that they were aware of the shooting and that they knew three of the gunmen were still at large. They testified they were scared and knowledge of the shooting affected their willingness to testify.

(*Id.* at 6.)

As grounds for federal habeas relief, Petitioner claims: (1) the trial court violated his right to confrontation by limiting cross-examination; (2) his defense counsel rendered ineffective assistance;[1] (3) the prosecutor committed misconduct; (4) the jury was instructed improperly with respect to the burden of proof; (5) there was insufficient evidence to support the conviction; and (6) the prosecution failed to submit sufficient evidence of Petitioner's motive.

//
//

---

[1] This is a consolidation of all Petitioner's ineffective assistance claims listed in the Order to Show Cause (Docket No. 16).

## STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

//
//
//
//

## DISCUSSION

### I. Limitations of Cross-Examination

Petitioner claims that the trial court violated his right to confrontation when it curtailed his impeachment of two prosecution witnesses, Brian Lang and Alex Guererro. The trial court allowed the defense to present evidence that Lang and Guererro were facing felony charges on an unrelated matter, but it disallowed any reference to the fact that the charges involved robbery. The state appellate court rejected Petitioner's claim, finding no abuse of discretion:

> the [trial] court carefully weighed the admissibility of the evidence that Guerrero and Bryan had been charged with robbery. The court noted that they had only been charged with the offenses and had not been convicted. The court admitted evidence that Guerrero and Bryan had been charged with felonies and faced possible prison sentences. However, the court concluded that the potential prejudice in allowing the defense to suggest that "one robber robbing another robber isn't worthy of punishment" outweighed the probative value of admitting evidence that Guerrero and Bryan were charged with robbery. The court was not presented with any evidence regarding the underlying facts or circumstances surrounding the robbery. The record does not contain any information regarding the conduct underlying the charges. The jury learned that Mrs. Lang spent $5,000 to post bail for Bryan, that Bryan had been arrested a second time on felony charges about a week before trial, that those charges were subsequently dropped, and that Bryan hoped those charges would not come back because of his testimony in this case. Under the circumstances of this case, we cannot say the court abused its discretion when it excluded evidence that Guerrero and Bryan were charged with robbery.

(Ans., Ex. G at 15–16.)

The Confrontation Clause guarantees an opportunity for effective cross examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish. *See Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). For instance, the Confrontation Clause does not prevent a trial judge from imposing reasonable limits on cross-examination based on concerns of harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). However, "restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.'" *Michigan v. Lucas*, 500 U.S.

145, 151 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness's] credibility . . . had counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: "(1) the evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness." *U.S. v. Beardslee*, 197 F.3d 378, 383 (9th Cir. 1999) (citations omitted).

Petitioner has not shown that his Confrontation Clause rights were violated. First, he has not shown that the jury lacked sufficient evidence to assess the credibility of the two witnesses. The jury heard that the witnesses were facing felony charges and would receive long sentences if they were convicted. Such evidence alone achieves the goal of impeachment, which is to make "a general attack on the credibility of a witness." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Such evidence may not only imply that a witness is untruthful, but also that the witness is testifying in order win favor from the prosecutor. The reading of felony charges in this case, then, "afford[ed] the jury a basis to infer that the witness'[s] character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony." *Id.* However, the fact that the charges involved robbery adds nothing "Robbery" adds nothing to achieve this permissible end. Second, the trial court's ruling served the legitimate interests of avoiding prejudice and the confusion of issues, especially because the witnesses had been only charged, not convicted.

//

//

## II. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient, and, (2) that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Under the first *Strickland* prong, a habeas petitioner must show that defense counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). As for the prejudice prong, a reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### A. Requesting Limiting Instructions

Petitioner claims that his trial counsel rendered ineffective assistance when he failed to request limiting instructions regarding the shooting that occurred a few days after the robbery. The state appellate court rejected this claim:

> [Petitioner] asserts counsel was deficient when he failed to request a limiting instruction advising the jury that they could not consider the shooting evidence as proof that [Petitioner] was one of the robbers and could only use it to evaluate the witnesses' credibility. However, the court admonished the jurors twice that they could only consider the shooting evidence for the effect that it had on the witness's state of mind and instructed the jury, after all the evidence was in, that it was only to consider this evidence for the limited purpose for which it was admitted. In light of these instructions, it was not necessary for the court to specifically instruct the jury not to consider this evidence on the question of identity. Consequently, trial counsel's performance was not deficient for failing to request such an instruction.

(Ans., Ex. G at 31.)

Petitioner has not shown that defense counsel's performance was deficient. First, there was no need to request such an instruction because the jury in fact was instructed to use

Order Denying Petition
P:\PRO-SE\SJ.JF\HC.07\Wilson095.hc.md.wpd           6

the evidence solely for a narrow purpose. This Court must presume that that jury followed the instructions, *see Richardson v. Marsh*, 481 U.S. 200, 206 (1987), and Petitioner's mere allegations are insufficient to overcome this presumption. Second, because the requested instruction actually could have been seen as linking Petitioner with the shooting, defense counsel's decision not to seek the instruction was a reasonable tactical decision. Such tactical decisions must be accorded great deference. *Richter*, 131 U.S. at 789.

Nor Petitioner shown prejudice. It was stipulated that Petitioner was in custody when the shooting occurred, and thus any link between him and the shooting was purely speculative. Moreoever, the evidence against Petitioner was strong. Three eyewitnesses identified Petitioner as the robber, and the court minute order found at the crime scene provided corroboration of Petitioner's presence at the Lang residence.

### B. Court Minute Order

Petitioner claims that defense counsel rendered ineffective assistance by failing to "craft a solution" regarding the admission of the court minute order found at the crime scene. At trial,

> [t]he jury heard that Mrs. Lang found the court papers in David's room, that no one in the family recognized the name on the papers, that the papers indicated that [Petitioner] had made an appearance in the criminal courts on January 19, 2005 (four days before the robbery), that minute orders with green ink, like the one in this case, are given to defendants who are not incarcerated, that the public defender referral form is given to indigent defendants who are referred to the public defender's office, that [Petitioner] was scheduled to make another court appearance on February 15, 2005, and that Detective Avalos used the name and PFN number[2] on the minute order to identify [Petitioner] and create the photo line-up.

(Ans., Ex. G at 29.) Petitioner claims that defense counsel "made no effort to craft a solution, by stipulation or motion or objection, which would have permitted the prosecution to use the papers for the proper purpose of proving [Petitioner's] connection to the scene ... while shielding" him from the "inevitable prejudice" that would result from the jury knowing

---

[2] "A unique number assigned to every individual who is arrested in Santa Clara County that is reused each time the person is arrested." (Ans., Ex. G at 28–29.)

that he had committed another crime. (Pet. at 20.)

As the state appellate court concluded when it rejected his ineffective assistance claim, Petitioner's argument is flatly contradicted by the record. Defense counsel did try to "craft a solution": (1) he objected to the admissibility of the evidence; (2) he moved *in limine* to "sanitize" the order; and (3) he worked with the prosecutor to produce a redacted document. The minute order seen by the jury omitted any reference to the drug charge Petitioner faced. (Ans., Ex. G at 29.) Defense counsel tried various solutions, including trying to have the document excluded altogether. That he was unable to achieve Petitioner's proposed solution does not show that his performance was inadequate, especially considering that any solution would have to be either approved by the trial court or agreed to by the prosecutor. Petitioner's showing is insufficient to create even an inference that defense counsel's performance was deficient under *Strickland*, let alone to show that Petitioner suffered prejudice because of counsel's actions.

### III. Prosecutorial Misconduct

Petitioner claims that the prosecutor committed four separate acts of misconduct. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness so that there was a due process violation. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). In order to prevail on federal habeas review, the prosecutor's misconduct must have resulted in prejudice, that is, the misconduct must have had a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

### A. Reference to the Shooting

The trial court ruled that evidence of the shooting could not be used to prove Petitioner's identity. The prosecutor nonetheless made the following statement during

closing argument:

> Now, you have to believe that those four individuals who are [s]cott free because they got the wrong guy . . . they'd be laughing in their shoes . . . You think they're going to want to go back to that house and shoot it up because they got the wrong guy? No. They shot up that house because we got the right guy. 'Cause they know that if [Petitioner] goes down on this and he's convicted, he might want to talk. So they have a vested interest to make sure that the witnesses in this case are so scared they don't come to court. 'And by the way, if we accidentally kill David [Lang] along the way while we are trying to intimidate these witnesses, so [ ] be [ ] it.

(Ans., Ex. G at 20.) Defense counsel did not object. On appeal, the Attorney General conceded that the prosecutor's statements violated the trial court's *in limine* ruling. The state appellate court nonetheless denied Petitioner's claim, concluding that Petitioner had not shown prejudice:

> Mrs. Lang found court papers bearing [Petitioner]'s name and a unique identifying number that was assigned to him when he was arrested for the prior matter in David's room, in the area where [Petitioner] struggled with David before fleeing. No one recognized the name on the court papers. Although [Petitioner] suggested the evidence had been planted or that he was framed, there was no evidence supporting that conclusion. Guerrero, who had seen [Petitioner] both outside and inside the house, positively identified [Petitioner] from the photo line-up. Guerrero had never seen [Petitioner] before the night of the crime and began trembling when he saw [Petitioner]'s photo. Moreover, none of the photographs used in the photo line-up contained any names. Although some of the witnesses were unable to identify [Petitioner], Guerrero, David, and Bryan identified him both as the man they saw at the gate and as one of the gunmen. Martinez also identified him as the man she saw at the gate. Everly, who had identified him at the preliminary hearing, said he saw one of the gunmen at trial, but refused to identify that person. Although there was conflicting evidence on the identity issue, this case was not so closely balanced that the prosecutor's acts of misconduct contributed materially to the verdict. [Citation removed.] We therefore conclude there was no reasonable probability of a different result on the issue of identity and the prosecutor's misconduct in using evidence regarding the shooting to argue identity was not prejudicial.

(Ans., Ex. G at 20–21.)

For two reasons, Petitioner's claim cannot serve as a basis for federal habeas relief. First, because defense counsel failed to object at trial, it is procedurally defaulted under the contemporaneous-objection rule. *See Coleman v. Thompson*, 501 U.S. 772, 749–50 (1991), and *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004). Second, the state appellate court's conclusion that Petitioner suffered no prejudice from the prosecutor's actions was not

unreasonable. As that court observed, there was ample and strong evidence that Petitioner had committed the robbery, quite apart from evidence of the shooting or the prosecutor's reference to it. The strength of that evidence outweighs any inference that the verdict would have been different had the prosecutor not violated the trial court's order.

### B. Assertion that David Lang Was Not Violent

Petitioner also claims that the prosecutor committed misconduct when he stated without an evidentiary basis that David Lang was not a violent person. The facts are as follows:

> Unlike the other victims, who testified that they were afraid of the intruders, David testified that he was angry that the gunmen had hit Bryan; that as he crawled from his parents room to his room, he thought about revenge; that rage was building inside him and he was thinking about revenge shortly before he struck defendant; and that after they found [Petitioner's] court papers, he got madder and wanted more revenge.
>
> In his opening argument, the prosecutor stated that while David was being beaten up, "[h]e's biding his time and he's thinking to himself, 'I'm going to wait for my opportunity.' I think his words was [sic] rage, revenge . . . Everybody else in that house was . . . thinking of . . . fear . . . And this kid was thinking 'I'll wait for my chance. I'll wait till my chance, rage, revenge.' [¶] He's not a violent child . . . child. He's not a violent young adult. But he did what he felt like he had to do."

(Ans., Ex. G at 21–22.) Defense counsel did not object to these comments. The state appellate court rejected Petitioner's misconduct claim, concluding that the prosecutor's statement was a permissible inference from the evidence:

> Unlike some of the other witnesses, who had testified to previous arrests or incarceration, there was no evidence that David had ever been involved in criminal or violent conduct. On the night of the robberies, David decided to stay home and watch over the house, rather than go out with his girlfriend, because there were young people there who were drinking. This fact tended to portray him as a responsible young man. David had a gun safe in his room. He testified he purchased it for his father after he inherited some of his grandfather's guns. According to David, the family did not keep his grandfather's guns in the safe and stored them in a shed in the backyard. However, they did keep a .357 magnum and a shotgun in the gun safe, as well as papers, jewelry, money and other valuables. David's father also kept guns hidden in the house. The intruders found a replica of a 30/30 Winchester rifle, which was not loaded, under the bed in the master bedroom. There was no evidence regarding David's use of or experience with guns prior to the robberies. On this record, it was a permissible inference for the prosecutor to

argue that David was not violent. Moreover, it was a brief, isolated reference that does not rise to the level of misconduct.

(*Id.* at 22–23.)

Petitioner's claim lacks merit. First, like his previous claim, it is procedurally defaulted under the contemporaneous-objection rule. *See Coleman*, 501 U.S. at 749–50, and *Paulino*, 371 F.3d at 1092–93. Second, there was nothing manifestly improper about the prosecutor's comments. As the state appellate court observed, the comments amounted to nothing more than a brief, isolated reference that was supported by at least some evidence in the record. Third, Petitioner has not shown prejudice.

### C. Vouching

Petitioner claims that the prosecutor committed misconduct when he vouched for David Lang's credibility in his opening argument. The prosecutor's comments were as follows:

> "David, David Lang. He's a pretty remarkable kid. I've gotten to know David Lang . . . over the course of the time that I have been assigned this case. I have to admit, the first time this file came to my office, it was just another file . . . [¶] I read the police report and I'm thinking I'm reading fiction. I absolutely said, 'No way this went down like this. There's no way anybody bum rushes four armed gunmen in their house after they have been pistol-whipped and bleeding and fights them off. No way.'" The prosecutor described how he met David at the preliminary hearing and argued, "And I meet the young man. And he's with his mother. And after talking to him and getting his side of the story, and looking in his eyes, I realized . . . everything that was in that report, is absolutely true.
>
> "This warrior came in here and testified about what happened. There's not one thing he said that wasn't true. That's what happened that night. As unbelievable as it may sound, when I read the police report the day I was given this case back in February, and the day someone tried to kill this young man in his sleep in April, that became my priority."

(Ans., Ex. G at 23–24.) The trial judge interrupted the prosecutor, called him to the sidebar, and then excused the jury. When the jury returned, the court instructed the jurors as follows:

> Ladies and Gentlemen, I want to remind you of one thing and that is this, remember that what the attorneys say is not evidence. And remember also, that to the extent that an attorney expresses a personal belief not based on the evidence, but based on the — in the truth or credibility of a witness, it is improper and is not to be considered by you. You are the sole judges of the credibility of the witness, and you will make your own determination of the

1 credibility of each witness and the weight to be given their testimony.
2 (*Id.* at 24–25.) Petitioner's trial counsel did not object to the prosecutor's comments. On appeal, the Attorney General conceded that the remarks constituted misconduct, but argued there was no resulting prejudice. The state appellate court rejected Petitioner's claim, concluding that the trial court's instructions cured any harm. (*Id.* at 25.)

The fairness of a Petitioner's trial may be measured by considering "(1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; (3) the weight of the evidence against the accused." *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005); *Darden*, 477 U.S. at 181–82. Under these standards, Petitioner's claim once again lacks merit. First, it is procedurally defaulted like his other misconduct claims under the contemporaneous- objection rule. *See Coleman*, 501 U.S. at 749–50, and *Paulino*, 371 F.3d at 1092–93. Second, this Court must presume that the jury followed instructions to disregard the prosecutor's comments. *See Marsh*, 481 U.S. at 206. Finally, the weight of the evidence against Petitioner was strong.

### D. Criminal History

Finally, Petitioner claims that the prosecutor committed misconduct when he referred to matters outside the record to suggest that Petitioner had a criminal record. The facts are as follows:

> [The] [p]rosecutor described [Petitioner]'s arrest on the instant charges, stating "[Petitioner] is picked up by San Jose, a unit with San Jose called the violent crimes enforcement task force team, and their job, among other things is to go out and arrest persons who have committed violent crimes. And the reason that Officer Avalos or Officer Lopez didn't just roll up and arrest them like you might see on TV is because when you go out and arrest someone, especially someone who has a history or you suspect is involved in violent crime, you're going to go out in force, you're going to go out with flak jackets on and you're going to go out and arrest them following a certain protocol and that's what happened in this case." [Petitioner] complains of the prosecutor's reference to "someone who has a history" and argues there was no evidence to support the prosecutor's statement that [Petitioner] had a criminal history.

(Ans., Ex. G at 25.) Defense counsel did not object. The state appellate court rejected Petitioner's misconduct claim because evidence existed in the record to support the

Order Denying Petition
P:\PRO-SE\SJ.JF\HC.07\Wilson095.hc.md.wpd

12

1 comments:

> Detective Avalos testified that he obtained a warrant for [Petitioner]'s arrest and had the warrant enforced by the Violent Crime Enforcement Team. There was evidence that [Petitioner] had been arrested before and charged with at least one prior crime based on the minute order and referral to the public defender's office that Mrs. Lang found in David's room, both of which were in evidence. [Petitioner] was arrested in this case because he was suspected of committing multiple acts of armed robbery and an assault with a deadly weapon, which are violent crimes. Since there was evidence that [Petitioner] had been charged with a previous offense and that he had committed the violent crimes charged in this case, there was no misconduct related to this portion of the prosecutor's argument. Moreover, the prosecutor's argument refers to "someone who has a history or you suspect is involved in violent crime." [Italics removed.] The use of the disjunctive term "or" suggests that [Petitioner] met one, not necessarily both of the conditions. The prosecutor also told the jury the task force's job was to arrest persons "who have committed violent crimes." Thus the focus of the argument was on the fact that [Petitioner] was charged with committing violent crimes and not the assertion that he had a prior criminal history.

(*Id.* at 25–26.)

Petitioner's claim is both procedurally defaulted because defense counsel failed to object at trial. Because Petitioner failed to object at trial, the claim is procedurally defaulted, and unsupported by the record.

### IV. Standard of Proof

Petitioner claims, without elaboration, that the wrong standard of proof was applied at trial. Petitioner provides no details or citations to the record, nor any evidence, to support this claim.

### V. Sufficiency of the Evidence

Petitioner claims, again without elaboration, that the evidence was insufficient to support his convictions. Again, Petitioner provides no details, citations to the record, nor any evidence, to support his claim.

### VI. Motive

Petitioner claims that the prosecutor failed to offer any evidence of motive. However, Petitioner has not shown that motive was an element of any of the charges against him, or that the prosecutor had an obligation to offer such evidence.

Order Denying Petition
P:\PRO-SE\SJ.JF\HC.07\Wilson095.hc.md.wpd

13

### VIII. Additional Claims

Again, with little or no elaboration, Petitioner asserts several additional claims with respect to alleged to flaws in the jury instructions and failures by his trial counsel. Because Petitioner offers no support for these claims, the Court need not consider them further.

### CONCLUSION

Petitioner has failed to show that there was "no reasonable basis for the state court to deny relief," *Richter*, 131 S. Ct. at 784, that is, he has not shown that the state court's decision as to the above claims was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Accordingly, the petition is DENIED. A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

DATED: September 21, 2011

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

STEVEN D. WILSON,

      Petitioner,

v.

ROBERT A. HOREL, Warden,

      Respondent.

Case Number: CV07-06095 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on _____9/23/11_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Steven Dorell Wilson F-18575
Pleasant Valley State Prison
P.O. Box 8503
Coalinga, CA 93210

Dated: _____9/23/11_____

Richard W. Wieking, Clerk
    G. Garvin, Deputy Clerk